IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:09-CV-160-FL

| | |
|---|---|
| R.D. MCMILLAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GENERAL ELECTRIC COMPANY, )<br>GE DISABILITY BENEFITS CENTER, )<br>and METROPOLITAN LIFE )<br>INSURANCE COMPANY, )<br>)<br>Defendants. ) | AMENDED<br>MEMORANDUM & RECOMMENDATION |

This action is before the Court on a series of motions filed by both Plaintiff and Defendants. Defendants GE Disability Benefits Center and Metropolitan Life Insurance Company (collectively referred to as "MetLife"[1]) filed a motion to dismiss Plaintiff R.D. McMillan's complaint. [DE-26]. McMillan responded [DE-41], MetLife replied [DE-42], and McMillan filed a sur-reply brief [DE-48]. MetLife filed a motion to strike McMillan's sur-reply [DE-51], to which McMillan responded [DE-58]. In addition, Defendant General Electric Company, ("GE") filed a motion to dismiss McMillan's complaint. [DE-29]. McMillan responded [DE-40], GE replied [DE-43], and McMillan filed a sur-reply brief [DE-44]. GE filed a motion to strike McMillan's sur-reply [DE-49], to which McMillan responded [DE-57].

---

[1] GE Disability Benefits Center is a division of Metropolitan Life Insurance Company that handles disability claims for General Electric Company. [DE-20]. Accordingly, these two Defendants are actually one entity.

1

McMillan filed a motion to strike [DE-46], and both MetLife and GE responded [DE-53, 55]. In addition, McMillan filed a motion to add missing Equal Employment Opportunity Commission ("EEOC") files [DE-47]. GE responded to this motion. [DE-56]. Finally, McMillan filed a motion to update the court and to resolve the EEOC file record [DE-59], and GE responded to the motion [DE-60].

The Court entered an Order and Memorandum and Recommendation on May 25, 2010, addressing these matters. [DE-61]. However, following entry of the Order and Memorandum and Recommendation, the Court learned that the Clerks' Office inadvertently failed to scan and docket various exhibits that should have been attached to McMillan's response to GE's motion to dismiss [DE-40], as well as four pages from McMillan's complaint and amended complaint [DE-1, 5, 9, & 10]. Accordingly, the Court decided to reconsider its Order and Memorandum and Recommendation in light of these additional documents. [DE-64]. After a careful review of these additional documents, the Court comes to the same conclusions as it did in the prior Order and Memorandum and Recommendation; Defendants motions to dismiss should be granted.

**PROCEDURAL AND FACTUAL HISTORY**

McMillan, proceeding pro se, filed his amended complaint on October 8, 2009. [DE-10]. He claims that GE and MetLife discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). Am. Compl. ¶ 1. McMillan worked for GE as a machinist from April 1, 1986 until July 2, 2003. Id. ¶ 7. He stopped working at GE after he suffered an injury to his left wrist and was diagnosed with "Bilateral Carpal Tunnel Syndrome and chronic left wrist pain." Id. ¶ 40. A doctor imposed "lifting, pushing and pulling restrictions." Id. He never returned to work for GE.

McMillan alleges that GE and MetLife "forced [him], a qualified individual with a disability out of work into short-term disability/medical leave, and during the first 12 months of [his] disability, the defendants illegally obstructed all of [his] efforts to return to work to his former job as a machine operator." Id. ¶ 20.

McMillan alleges that between July 2, 2003 and September 2003, he underwent medical evaluations by various doctors working for GE as well as his own treating physician in order to obtain a release to return to work. Id. ¶ 28-31. He was ultimately unsuccessful in returning to work. Id.

On April 30, 2004, McMillan states that he received a letter from Defendants advising him that his long-term disability payments would end on July 1, 2004, unless he could show that he was "totally disabled." Id. ¶ 21. On May 21, 2004, McMillan asserts that he "informed the defendants and clearly affirmed that he wanted to return to work before a break in service" and that "he was not pursuing a Disability Pension at that time." Id. ¶ 35. McMillan states that in response, "Defendants told [him] he needs to be released by a doctor to return to work, and the business has to be able to accommodate any restrictions." Id.

McMillan asserts that his attending physician completed a "Physician's Statement Form," opining that he could return to work with "no restrictions" effective June 7, 2004. Id. ¶ 37. He claims that Defendants received notice of this Form on June 14, 2004, and thereafter "illegally obstructed [his] attempts to return to work." Id. ¶ 25.

McMillan alleges that he filed a charge of discrimination with the EEOC in September 2007. Id. ¶ 2 ; Pl. Resp. in Opp. at 15 [DE-40]. In addition, he states that he amended his EEOC charge after discovering in February and December 2008 that

3

Defendants allegedly "deliberately denied and fraudulent[ly] concealed employment opportunities from him." Am. Compl. ¶¶ 8, 15. McMillan attached to his amended complaint a Dismissal and Notice of Rights letter from the EEOC stating that it was closing the file on McMillan's charge on non-jurisdictional grounds. Id. Ex. 1. McMillan did not attach to his amended complaint the charge that is the subject of the Dismissal and Notice of Rights letter. The letter was sent to McMillan and a carbon copy was sent to the Law Department at MetLife. Id.

After receiving McMillan's complaint, counsel for GE obtained a charge of discrimination filed by McMillan on February 13, 2008, with the EEOC. GE's Mot. to Dismiss Ex. 1 [DE-29]. The particulars section of the charge states that starting on September 21, 2007 onward, McMillan has "been harassed, intimidated and threatened with the termination of [his] long term disability benefits" as a result of canceling a Functional Capacity Evaluation scheduled by GE. Id. at 4.

## DISCUSSION

I.  Defendants' Motions to Strike [DE- 49 & 51]

McMillan filed sur-reply briefs in opposition to both MetLife's and GE's motion to dismiss. [DE-44 & 48]. Defendants filed motions to strike the sur-reply briefs pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and Local Civil Rule 7.1. [DE-49 & 51].

Rule 12(f) allows the Court to "strike from a pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). In addition, Local Civil Rule 7.1 limits briefing for a motion to a memorandum in support, a response in opposition, and a reply brief. Local Civil Rule 7.1. McMillan's sur-reply

4

briefs are not authorized by the local rules; however, as McMillan is proceeding pro se, in an abundance of caution to ensure that his arguments are fully presented, the Court will consider the briefs. Accordingly, Defendants' respective motions to strike McMillan's sur-reply briefs are **DENIED**. [DE-49 & 51].

II.     Defendants' Motions to Dismiss [DE-26 & 29]

A motion to dismiss under 12(b)(6) tests the sufficiency of the facts pleaded in the complaint. The relevant inquiry is whether the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It determines whether a claim is stated; it does not resolve issues of disputed facts, the merits of a claim, or the applicability of defenses. Republican Party v. Martin, 908 F.2d 943, 952 (4th Cir. 1992). When reviewing a motion to dismiss, the Court considers the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). Generally, if the Court considers matters outside the complaint in ruling on a motion to dismiss, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985). However, a court may consider "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed," without converting the motion to dismiss into a motion for summary judgment. Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395, 396-97 (4th Cir. 2006).

McMillan did not attach his original EEOC claim letter to his complaint. With his amended complaint, he filed a Dismissal and Notice of Rights letter, but did not attach

5

the charge to which the letter referred. In addition, McMillan attached an intake form that he completed with the New Hannover Human Relations Commission to his response to GE's motion to dismiss. GE attached a Charge of Discrimination filed by McMillan on February 13, 2008, to its motion to dismiss.

McMillan specifically references his filings with the EEOC in his complaint. Am. Compl. ¶ 8 [DE-10]. In addition, the authenticity of the Charge of Discrimination cannot reasonably be challenged. Therefore, the Court will consider the Dismissal and Notice of Rights letter, the Charge of Discrimination, and the intake form, without converting the instant motion into one for summary judgment. See American Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (concluding that when a piece of evidence is explicitly referred to and integral to a plaintiff's complaint and the authenticity of the evidence reasonably cannot be challenged, a court may consider the evidence when deciding a Rule 12(b)(6) motion).

Further, courts have a duty to "interpret charitably" pleadings filed by pro se litigants. Haines v. Kerner, 404 U.S. 519, 520 (1972). Accordingly, the Court takes special care to liberally assess McMillan's complaint.

    a. MetLife's Motion to Dismiss [DE-26]

MetLife asserts that it is not McMillan's employer and, therefore, cannot be sued under the ADA for discrimination. McMillan, in his complaint, alleges that MetLife and GE discriminated against him by refusing to allow him to return to work at GE after he left because of a work-related injury he sustained to his left wrist. Am. Compl. ¶ 28. He claims that the actions of MetLife and GE were illegal under the ADA and does not assert any other legal basis for recovery. Id. ¶ 1.

The ADA prohibits an employer from discriminating against an employee because of a disability that the employee may have. 42 U.S.C. § 12112(a). Specifically, the relevant statue provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . terms, conditions and privileges of employment." Id. (emphasis added). In order to qualify as a "covered entity," the defendant must be "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). Accordingly, to bring a claim for employment discrimination under the ADA, a plaintiff must establish that an employer-employee relationship exists between the plaintiff and defendant. Id.

Here, McMillan has failed to show that MetLife employed him.[2] An insurance company is not considered an "employer" for purposes of the ADA with regard to an individual when it merely administers a disability policy under which the individual is covered. See Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1113 (9th Cir. 2000) (noting that an insurance company was not a "covered entity" because "[i]t was simply the administrator of the employer's disability policy"); Reigel v. Kaiser Foundation Health Plan of North Carolina, 859 F. Supp. 963, 966 (E.D.N.C. 1994) (granting a motion for summary judgment to a health plan because it was a separate entity from the plaintiff's employer and there was no indication that it had employed the plaintiff); Nearhood v. Freestate Health Plan, Inc., No. MJG-96-2845, 1997 WL 151545, at *2 (D. Md. Jan. 31, 1997) (granting a motion to dismiss insurance agencies because

---

[2] Clearly, MetLife, which is an insurance company, is not an employment agency, labor organization, or joint labor-management committee. Accordingly, the Court engages only in an analysis of whether MetLife could be considered McMillan's employer.

7

they were not the plaintiff's employer and rejecting the contention that an insurance company could be considered the agent of an employer by virtue of administering a health plan for the employer).

McMillan himself admits, he was "employed by General Electric." Pl.'s Resp. at 1 [DE-41]. However, McMillan contends that MetLife employees identified themselves as employees of GE to him and his physician, used the GE logo on their envelopes and letterheads, and had some control over his employment opportunities, which made MetLife his employer for purposes of the statute. Id. at 8.

Some courts have concluded that a defendant does not need to be a plaintiff's direct employer to qualify as a "covered entity" subject to liability under the ADA. See Carparts Distrib. Ctr. v. Automotive Wholesaler's Ass'n of New England, Inc., 37 F.3d 12, 18 (1st Cir. 1994) (noting that certain circumstances might arise in which a defendant that is not a direct employer of the plaintiff could still be sued under the ADA); United States v. State of Illinois, 3 A.D. Cases 1157, 1994 WL 562180, at *2 (N.D. Ill. 1994) ("There is no express requirement that the covered entity be an employer of the qualified individual."). However, Fourth Circuit precedent counsels against such a finding in this case.

Carparts and Illinois rely on an analogy between ADA Title I and Title VII of the Civil Rights Act of 1964, under which some courts have considered defendants to be "employers" despite the absence of a direct employment relationship with the plaintiff. See Carparts, 37 F.3d at 18; State of Illinois, 1994 WL 562180, at *3. To determine whether an entity or individual is an "employer" under Title VII, the Fourth Circuit employs a test that combines common law agency principles, which look at the level of

control that the purported employer has over the employee, with aspects of the "economic realities" test, which looks to whether an employee, as a matter of economic reality, is dependent on the purported employer. See Garrett v. Phillips Mills, Inc., 721 F.2d 979, 981-82 (4th Cir. 1983) (discussing the applicable test); Miller v. Ingles, No. 1:09cv200, 2009 WL 4325218, at *7 (W.D.N.C. Nov. 24, 2009) (same). Here, there is no evidence that MetLife either controlled McMillan's work or had anything to do with his compensation, terms, conditions or privileges of employment. Accordingly, MetLife cannot be considered McMillan's actual or putative employer. Therefore, the Court **RECOMMENDS** that MetLife's motion to dismiss be **GRANTED**. [DE-26].

  b. GE's Motion to Dismiss [DE-29]

GE asserts that McMillan's complaint must be dismissed because (1) he failed to timely file a charge of discrimination with the EEOC and (2) his ADA claims against GE are barred by his failure to raise them in an EEOC charge. GE's Mem. at 2 [DE-30].

  i. Failure to Timely File EEOC Charge

GE first argues that McMillan failed to timely file EEOC charges against it, and therefore, the suit must be dismissed. McMillan asserts in his amended complaint and response to GE's motion to dismiss that he filed a charge with the EEOC in September 2007. Am. Compl. ¶ 8 [DE-10]; McMillan's Resp. to Mot. to Dismiss at 15 [DE-40].

Prior to filing an employment discrimination action in federal court, including any claim under the ADA, a plaintiff is required to file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory activity. See 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); Felty v. Graves-Humphreys Co., 785 F.2d 516, 518-19 (4th Cir. 1986). The statutory filing period is increased to 300 days in

9

a deferral state if the plaintiff "initially instituted proceedings with a [designated Fair Employment Practices ("FEP")] State or local agency." See 29 U.S.C. §§ 626(d)(2), 633(b); 42 U.S.C. § 2000e-5(e)(1). "A deferral state is a state with an agency 'with authority to grant or seek relief from [an unlawful employment] practice or to institute criminal proceedings with respect thereto upon receiving notice thereof . . . .' 42 U.S.C. § 2000e-5(e)(1)." Bratcher v. Pharm. Prod. Dev. Inc., 545 F. Supp. 2d 533, 539 n.4 (E.D.N.C. 2008). North Carolina is a deferral state in limited circumstances. Id. at 539-42 (discussing North Carolina's status as a deferral state when the New Hanover County Human Relations Commission has subject matter jurisdiction over a charge, or when the North Carolina State Office of Administrative Hearings actually has jurisdiction over a charge); N.C. Gen. Stat. § 7A-759(a); 29 C.F.R. §§ 1601.13(a)(2), 1601.74. In addition, the EEOC has designated the Human Relations Commission in New Hanover County as a FEP agency. 29 C.F.R. § 1601.74. "A FEP agency 'is a state or local agency that enforces state and local civil rights laws. The jurisdiction of such agencies overlaps that of the EEOC.'" Bratcher, 545 F. Supp. 2d at 539 (quoting EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 410 n.15 (4th Cir. 2005)).

On September 24, 2007, McMillan filled out an intake form with the New Hanover Human Relations Commission, claiming that he was discriminated against due to a physical disability. McMillan's Resp. to Mot. to Dismiss Ex. 1 at 6. In February 2008, McMillan filed a charge of discrimination with the Human Relations Commission in New Hanover County in addition to the EEOC. GE's Mem. Ex. 1. [DE-30]. This Court has recognized the question of whether the enabling legislation and ordinance establishing the New Hanover County Human Relations Commission are unconstitutional under

North Carolina law, but has not reached the issue. See Bratcher, 545 F.Supp.2d at 541 n.7 (noting the "delicate existence" of the New Hanover County Human Relations Commission). Notwithstanding this issue, in this case, the Court need not determine the constitutionality of the New Hanover County Human Relations Commission in light of North Carolina law or whether McMillan permissibly filed his charge of discrimination with the Commission. Even assuming that the New Hanover County Human Relations Commission is a legitimate FEP agency and that McMillan adequately filed his charge of discrimination with it, he did not timely file his charge within the applicable 300 day filing period.

McMillan states in his response to the motion to dismiss that he filled out an intake form with the EEOC on September 24, 2007. McMillan's Resp. to Mot. to Dismiss at 15 [DE-40]. Although McMillan has not provided documentation that establishes that he filed a charge with the EEOC on that date, he did fill out an intake form with the New Hanover Human Relations Commission on September 24, 2007. McMillan's Resp. to Mot. to Dismiss Ex. 1 at 6.[4] Nonetheless, the Court will assume that McMillan filed a charge with the EEOC in September 2007, as he alleges, for purposes of the motion to dismiss.

Accordingly, the discriminatory conduct by GE must have occurred within the 300 days prior to September 24, 2007 (or after November 28, 2006). McMillan asserts that in June 2004, his physician cleared him to work, and that such documentation was

---

[4] The Charge of Discrimination filed with the EEOC that GE attached as an exhibit to its motion to dismiss was filed on February 13, 2008. The Charge of Discrimination filed with the New Hanover County Human Relations Commission that GE attached as an exhibit to its motion to dismiss was filed on February 18, 2008. The Dismissal and Notice of Rights letter that McMillan attached to his Amended Complaint was dated July 7, 2009, but did not provide a date on which the charge was filed.

provided to GE, but GE failed to reinstate him. Am. Compl. ¶ 24 [DE-10]. In addition, he argues that he made several attempts to return to work, the last being on July 27, 2004. McMillan's Resp. at 4 [DE-40]. He further alleges that in December and February 2008, he learned that GE fraudulently concealed from him documentation from his treating physician clearing him to work, as well as forged and back dated documents in his medical file. Id. ¶¶ 8, 25. Accordingly, McMillan asserts that GE's discriminatory conduct occurred in June and July 2004, although he did not learn of the alleged fraudulent conduct until 2008. The limitations period starts from the last alleged discriminatory act, and not with the plaintiff's knowledge. Felty, 785 F.2d at 518-19. Therefore, to comply with the limitations period, McMillan needed to file charges with the EEOC by May 2005, or within 300 days from GE's July 2004 conduct. However, based on the facts alleged in McMillan's amended complaint, he did not file his charge with the EEOC until September 2007, two years after the limitations period had run.

ii. Modification/Tolling Doctrines Do Not Apply

The failure to file a timely complaint with the EEOC bars the claim in federal court. See McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 131 (4th Cir. 1994) ("When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court. This filing requirement acts as a . . . statute of limitations. . . .") (citations omitted). However, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

McMillan asserts that he is entitled to have the limitations period extended because he did not learn of GE's alleged fraudulent acts until 2008. The Fourth Circuit Court of Appeals has recognized three means by which a plaintiff may modify a limitations period in employment discrimination cases: the discovery rule, equitable tolling, and equitable estoppel. See Hamilton v. 1st Source Bank, 895 F.2d 159, 163 (4th Cir. 1990) (discussing the discovery rule); Lekas v. United Airlines, Inc., 282 F.3d 296, 301 (4th Cir. 2002) (discussing the doctrines of equitable tolling and equitable estoppel).

Under the discovery rule, the statute of limitations "begins to run when the plaintiff discovers, or in the exercise of reasonable diligence should discover, facts giving rise to a claim." Hamilton, 895 F.2d at 163. The discovery rule applies in cases where a plaintiff is not forewarned of the discrimination, such as in pay discrimination cases, because a plaintiff may not know the salaries of his or her coworkers. Id.

Here, McMillan cannot rely on the discovery rule because he knew that he was not reinstated to his job in July 2004, despite his belief that he was healthy enough to return to work and his numerous attempts to do so beginning in July 2003. Am. Compl. ¶ 28. Whether or not GE deliberately concealed from him documents from his treating physician that supported his contention that he was able to work does not alter the fact that he should have discovered his alleged cause of action in July 2004, when he was not reinstated to his job despite his belief that he was healthy enough to work and his numerous attempts to return to work.

The doctrines of equitable tolling and equitable estoppel are equally inapplicable. They apply when a defendant engages in misconduct that prevents the plaintiff from

13

timely filing his or her claim. Lekas, 282 F.3d at 301. "Equitable tolling applies where a defendant, by active deception, conceals a cause of action. And equitable estoppel applies where the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline, even though the plaintiff knows that it exists." Id. (internal quotations omitted).

Here, McMillan cannot rely on either of these doctrines because there has been no evidence presented that GE engaged in intentional misconduct in order to conceal a cause of action or to induce McMillan to miss a filing deadline. Taking McMillan's allegations as true, GE concealed documents from McMillan that indicated he could return to work, forged a Physician's Statement Form and back dated a form filled out by McMillan's treating physician. McMillan's Resp. at 18 [DE-40]; Am. Compl. ¶¶ 20, 25 [DE-10]. None of this alleged misconduct, however, served to hinder McMillan from timely filing an action. Cf. Dement v. Richmond, Fredericksburg & Potomac R.R., 845 F.2d 451, 461 (4th Cir. 1988) (tolling the limitations period where appellants were "affirmatively asked" to refrain from suit and were told that their problem would be solved without the "need for civil suit"); United States ex rel. Humble Oil & Refining Co. v. The Fidelity & Cas. Co., 402 F.2d 893, 896-97 (4th Cir. 1968) (invoking equitable estoppel where the defendant acknowledged liability and there was an explicit promise to pay the plaintiff's outstanding debts, followed by extensive negotiations, which continued until the limitations period had run). As discussed above, McMillan should have realized that a cause of action accrued in 2004, and GE never did or said anything to induce McMillan to forego filing suit. Lekas, 282 F.3d at 301. Accordingly, it is the Court's opinion that the limitations period should not be tolled or otherwise modified.

14

Case 7:09-cv-00160-FL   Document 70   Filed 07/12/10   Page 14 of 20

### iii. McMillan Failed to Raise ADA Claims in EEOC Charge

McMillan's complaint should be dismissed for an additional reason: he failed to include his claims against GE in his EEOC Charge. The Fourth Circuit has held that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent" lawsuit. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). A plaintiff fails to exhaust administrative remedies where "his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005).

McMillan's February 2008 EEOC Charge names a claims specialist at GE Disability Benefits Center as respondent and was sent to the GE Disability Benefits Center, which as described above, is a division of MetLife, and not a part of GE. GE's Mem. Ex. 1 at 3 [DE-30]. However, in the body of his Charge, McMillan notes that GE is his employer. Id. at 4. It appears that the Dismissal and Notice of Rights was also sent to MetLife and not GE. Am. Compl. Ex. 1 [DE-10]. Filing a Charge against the correct employer is important because one reason for requiring a plaintiff to exhaust administrative remedies is to provide notice of the alleged discrimination so that the employer has an opportunity to correct it. See Chacko, 429 F.3d at 510 (noting that "notice gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions"). However, even if McMillan had adequately named GE, he still has failed to allege the same type of discrimination in his EEOC Charge and in his current complaint.

15

In the February 2008 Charge, McMillan asserts that he has been "harassed, intimidated and threatened with the termination of [his] long term disability benefits." GE's Mem. Ex. 1 at 4 [DE-30]. He claims that GE discriminated against him by requiring him to undergo a Functional Capacity Evaluation in order to keep his long-term disability benefits and ultimately terminating those benefits in January 2008.[6] Id. However, the crux of McMillan's amended complaint appears to be that he was able to return to work in 2003 and 2004, but that GE discriminated against him by refusing to reinstate him to his position or make accommodations so that he could return to work at GE. Am. Compl. ¶¶ 20, 25 [DE-10]. Discrimination with regard to the termination of long-term disability benefits is not the same discriminatory conduct as an employer's refusal to reinstate a former employee. Chacko, 429 F.3d at 506.

McMillan also notes in his complaint that his long-term disability benefits were improperly terminated. Id. ¶¶ 75-80. Therefore, he briefly discusses in his complaint the same conduct that is the subject of the EEOC Charge. However, Claimant's allegations regarding the termination of his benefits are peripheral and also implicate the actions of MetLife and not GE.

Moreover, the allegations that McMillan's long-term disability benefits were impermissibly terminated are not reasonably related to his claim that GE discriminated against him by not reinstating him to his prior position. See Smith v. First Union Nat'l Bank, 202 F.3d 234, 247-48 (4th Cir. 2000) (noting that "[i]f the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal

---

[6] Paradoxically, McMillan asserts in the Charge that he has "been disabled from work since March 2003." GE's Mem. Ex. 1 at 4 [DE-10]. This assertion is directly contrary to his allegations in the current suit that he was able to return to work in 2003.

16

litigation, the connection between the charge and the claim is sufficient"). A review of Claimant's disability status in 2008 would not reasonably lead to an investigation into GE's decision not to reinstate McMillan in 2004.

Accordingly, the Court **RECOMMENDS** that GE's motion to dismiss be **GRANTED**. [DE-29].

    III.    McMillan's Motion to Strike [DE-46]

McMillan filed a motion to strike in which he takes issue with some of the documents that were included in his long term disability benefits case file, which he received from MetLife. [DE-46]. As he does in his complaint, McMillan argues that a Physician's Statement Form was forged and backdated and that some medical documents were concealed from him. The Court recommends that both MetLife's and GE's motions to dismiss be granted, which would make this motion moot. Nonetheless, a review of the merits of this motion indicates that it should be denied.

It appears to the Court that McMillan would like the Court to somehow restrict Defendants from relying on the documents that he alleges were forged, concealed or otherwise tampered with. However, a motion to strike allows a court to strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). The documents that McMillan describes were not provided to the court, and he has not provided adequate grounds for striking any portion of the briefs filed by MetLife or GE in support of their motions to dismiss. Moreover, whether MetLife or GE fraudulently forged or concealed documents does not affect the fact that McMillan cannot properly sue MetLife under the ADA and that he failed to timely file this suit against GE.

17

Accordingly, McMillan's Motion to Strike is **DENIED**. [DE-46].

IV.     McMillan's Motion to Add Missing Files to Charge File [DE-47]

McMillan also filed a motion to have all missing files he filed with the EEOC added to the charge file. [DE-47]. McMillan alleges that there are a number of affidavits and letters that he provided to the New Hanover Human Relations Commission and the EEOC, which are missing from the charge file. He would like the Court to require those agencies to identify and itemize the documents that they have and then allow him to refile any documents that are missing. The Court recommends that both MetLife's and GE's motions to dismiss be granted, which would make this motion moot. Nonetheless, a review of the merits of this motion indicates that it should be denied.

This Court does not have the authority to require the New Hannover Human Relations Committee or the EEOC to review the documents that they have in McMillan's charge file and allow McMillan to refile documents with these agencies. Accordingly, his motion is **DENIED**. [DE-47].

V.      McMillan's Motion to Update Court and Resolve EEOC File Record [DE-59]

Finally, McMillan filed a motion to update the court and resolve the EEOC file record. [DE-59]. He is requesting that the Court allow him to send the entire EEOC charge file, and the alleged missing documents that is the subject of his motion to add missing files, to the court to be considered in his case. However, a motion to dismiss is generally determined by examining the briefing alone and not by relying on extrinsic evidence. See American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) ("[A]s a general rule extrinsic evidence should not be considered at the 12(b)(6) stage. . . ."). Accordingly, at this stage in the proceedings, it is not

18

Case 7:09-cv-00160-FL Document 70 Filed 07/12/10 Page 18 of 20

necessary for the Court to review the charge file in determining the motions to dismiss. McMillan's motion is, therefore, **DENIED**. [DE-59].

## CONCLUSION

For the foregoing reasons the Court **RECOMMENDS** the following:

(1) MetLife's Motion to Dismiss should be **GRANTED**. [DE-26]; and

(2) GE's Motion to Dismiss should be **GRANTED**. [DE-29].

In addition, the Court **ORDERS** the following:

(1) MetLife's Motion to Strike is **DENIED**. [DE-51];

(2) GE's Motion to Strike is **DENIED**. [DE-49];

(3) McMillan's Motion to Strike is **DENIED**. [DE-46];

(4) McMillan's Motion to Add Missing EEOC Files is **DENIED**. [DE-47]; and

(5) McMillan's Motion to Update the Court and Resolve the EEOC File Record is **DENIED**. [DE-59].

The Clerk shall send copies of this Memorandum and Recommendation to the pro se Plaintiff and counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and

accepted by, the District Court.

This the 12th day of July, 2010.

DAVID W. DANIEL
United States Magistrate Judge